THOMPSON & CO. v. GILLISON.

1. A building and loan association lent its money on the advance discount plan, at the rate of $1 per share, to be paid every month until the association should wind up, but with a provision that the amount of interest should in no case exceed at the winding up the rate of ten per cent. a year, the rate allowed by law. *Held,* that the association could not at the winding up take out of the member's shares of stock, assigned as collateral security, any more than would be sufficient to make his interest payment equal to 10 per cent. on the actual amount of the loan received.

2. A party purchased for $308.11 fourteen shares of stock in a building and loan association which by its charter would divide out its assets at the expiration of 89 months thereafter, and upon such shares took a loan of $2,800 at a discount reserved of $700, thus receiving only $2,100; and he agreed to pay on every share $1 on his stock and $1 for interest, during every month until the association should wind up, and then to assign and surrender his shares to the association. But the by-laws provided that in no event should the interest paid exceed the rate of 10 per cent. as allowed by law. *Held,* that the loan was not usurious, for his payments on stock and as interest for the unexpired term would not exceed the rate allowed by law; and even should his stock then be worth $200 a share, the by-law would not permit it to be applied to the debt beyond an amount that would make his interest payments equal to 10 per cent.

3. When a bond provides for counsel fees to be paid by the obligor in case the bond is collected by suit, he is liable therefor, even when the litigation is between himself and the obligee as co-defendants to an action to foreclose a junior mortgage.

Before HUDSON, J., Aiken, June, 1887.

This was an action by Jesse Thompson & Co. against D. B. Gillison, commenced December 17, 1886, to foreclose a mortgage bearing date May 26, 1886; and the Aiken Building & Loan Association and G. W. Croft, senior mortgagees, and D. W. Gaston, a junior mortgagee, were made defendants. The only question at issue was between the co-defendants, Gillison and the Building & Loan Association, the former alleging that his bond to the latter was usurious. Upon this issue the facts were as follows:

The Aiken Building & Loan Association was incorporated

December 23, 1883 (18 *Stat.*, 499), with power to issue stock to subscribers who would agree to pay one dollar a month for every share subscribed, such payments to continue until the value of every share was $200, provided that the charter should not continue longer than nine years from the organization of the association, at the end of which period all its property was to be sold and divided *pro rata* among the stockholders.   It also had power to lend its funds to members at a rate of interest not exceeding ten *per cent.* a year.

Under this charter the association was organized in April, 1884, and adopted by-laws, which provided *inter alia* (in article 6) that each stockholder should be entitled to an advance of $200 on every share held by him, to be advanced at the monthly meetings to such of the stockholders as would agree to pay the largest discount, such discount to be deducted from the advance, and in no case to be less than 25 per cent.   This advance was to be secured by mortgages, &c., and also by an assignment of one share of stock for every $200 advanced.

Section 5 of this article was as follows: "Any stockholder taking an advance shall pay to the treasurer, in addition to his or her monthly dues for shares, one dollar per month on each share for which such advance is made ; the rate of interest on the advance not to exceed ten per cent. per annum at the winding up of the association."

After the association had been in operation for 19 months, Gillison purchased from it 14 shares of stock for $308.11, and borrowed, or took an advance thereon of $2,800 at a discount of $700, thus receiving in cash $2,100.   To secure this advance, he executed his bond on November 28, 1885, "in the full and just sum of $2,800," wherein he acknowledged the receipt in cash of $2,100, and obligated himself to pay "the monthly sum of twenty-eight dollars (of which the sum of fourteen dollars per month is for subscriptions to the said shares, and the sum of fourteen dollars per month is for interest on the said sum actually paid over to said Daniel B. Gillison), to be paid on or before the fifth of each and every month, until the said association shall wind up and determine, and upon such winding up or determination, shall transfer and surrender the said fourteen shares to the

said association, in satisfaction of the advantage aforesaid, and shall stand to and abide by the constitution, rules, and regulations of said association, and if this bond shall be collected by suit, shall pay the additional sum of ten per cent. on the amount due on this bond as counsel fees."

This bond was secured by a mortgage of real estate, and an assignment of the fourteen shares of stock. At the time of action brought, Gillison was considerably in arrears on this bond.

The association, in its answer, alleged that Gillison was indebted on this bond in the sum of $2,800; and Gillison, in his answer, alleged that the bond was usurious.

The issues of law and fact were referred to James Aldrich, Esq., as special master, who made an elaborate report in which he fully set out the pleadings of the parties, the charter and by-laws of the defendant association, and the debt due by Gillison to the plaintiff, and to his co-defendants. Upon the only real issue in the case, Mr. Aldrich stated the facts as above, and reported as follows:

Mr. Gillison got $2,100 in cash; how did he agree to repay it? He "bid off" that sum at $700 discount; is he bound to repay this discount? and, if so, how? In his bond, Mr. Gillison binds himself to repay the $2,100. He does not, in terms, obligate himself to pay the $700 discount. We have seen, in art. II., sec. 3, how this discount is to be satisfied, and I will, further on, discuss it. By his bond, Mr. Gillison agreed to pay $14 per month as interest on the loan, and $14 per month as monthly dues on his stock. These sums were to be applied to the repayment of the $2,100 advance. Had Mr. Gillison continued his monthly payments of interest and dues, he would at the termination of the nine years (the termination of the charter, see charter, sec. 5) have paid as interest $1,512, and as stock dues $1,510, a total of $3,024.

We have seen that the association could legally charge as interest a rate not exceeding ten per cent. per annum. The bond and mortgage of Mr. Gillison was, of course, a written contract. The rate of interest is not stated in the usual manner, specifying the exact per centum in terms; but it does bear interest, and that rate, to be collected from the entire contract, if

legal, must control. The $14 payable monthly as interest amounts to eight per cent. per annum on $2,100. The association could charge ten per cent. per annum. Evidently the principal of the debt was not to be paid until the winding up of the association, hence it would bear interest all the time. The $14 to be paid monthly is not stated in the bond to be in full of interest; to the contrary, the bond, by its reference to the constitution, rules and ·regulations of the association, contemplated a higher rate of interest. Does it exceed ten per cent.? is the question.

The interest on $2,100 for nine years, at ten per cent. per annum, is $1,890. The monthly payment of $14 as interest, at ·the end of the nine years would be $1,512. Apply the interest actually paid to the interest due, and it falls short by $378. Add the principal $2,100 to the balance $378 still due as interest, and we find that Mr. Gillison would be due, on principal and interest, $2,478. He then, as his bond requires, transfers and surrenders to the association his 14 shares of stock, on which he has paid $1,512; then the association applies this $1,512, stock dues paid, to the satisfaction of the $2,478 due the association by Mr. Gillison, and he would still be due the association the sum of $966.

Or stated in another form, at the end of nine years Mr. Gillison would owe the association as principal $2,100, as interest ·thereon, at ten per cent. per annum, $1,890; total principal and interest, $3,990. Credit this amount $3,024, the amount paid the association by Mr. Gillison in dues and interest, and we find that Mr. Gillison would be due the association $966. How is that to be satisfied? Art. II., sec. 3, of the constitution answers ·the question. The $700 discount, the "bid" of Mr. Gillison, when he "bid off" the money, is charged against him. Deduct $700 from $966, and the balance $266, is the exact margin be-.tween the rate of interest paid by Mr. Gillison and the amount the association could, legally, have charged him.

It might be argued that this $700 discount which Mr. Gillison agreed to pay out of the possible earnings of his shares, being entirely of a speculative or possible value, and having no existence at the date of the contract, could and should not be considered as entering into the question of usury. But it is unneces-

sary to discuss that question, because if it is considered as money, in existence at the date of the contract, we have seen that even then the rate of interest falls short of ten per cent. per annum, and is, therefore, legal.

Mr. Gillison's bond requires that at the winding up or determination of the association he "shall transfer and surrender the said fourteen shares (meaning of stock) to the said association, in satisfaction of the advantage aforesaid, and shall stand to and abide by the constitution, rules, and regulations of said association."

What do the terms "transfer and surrender" mean? An absolute, unconditional "transfer," or a conditional "surrender"? When the bond was made Gillison assigned these shares as "collateral security." A maxim of the law is, "Once a mortgage, always a mortgage," and "collateral security" is nothing but a mortgage. The very object of this "collateral security" under the association's plan of operation, was twofold: 1st. During the continuance of the loan it operated as security therefor; and, 2d. When the loan became due, it became an actual fund out of which the loan was, in part, to be satisfied. Hence the word "surrender" aptly expressed the idea of the parties. Why should the shares be surrendered? 1st. To apply the monthly dues actually paid upon the stock to the discharge of the debt. 2d. Out of those earnings of the stock, if any, to the discharge of the $700 discount; and, 3d. If there was an excess of earnings above the $700 discount, then to pay such excess to Mr. Gillison. Mr. Gillison's bond made the constitution of the association a part of the contract, and art. II., sec. 3, controls the matter and disposes of it in the manner I have stated. There is no usury in the contract.

Counsel for Mr. Gillison has relied upon the case of *Columbia Building & Loan Association* v. *Bollinger* (12 *Rich. Eq.*, 124), as establishing the law in this State.   *   *   *   So that this case is not opposed to, or controlled by, the law in Bollinger's case. In the case of the *Mechanics' and Farmers' Building and Loan Association* v. *Dorsey* (15 *S. C.*, 463), the defendant borrowed from the association $1,000, and in addition to his monthly dues on stock, agreed to pay to the association monthly

$5 for interest, and $7.25 for premium bid, total $12.25 per month, or $147 per annum, until the assets of the association were worth $200 for every share.   When the shares would be worth $200 was uncertain, and wholly problematical, and as the $7.25 per month, called "premium," was simply interest in attempted disguise, and as $147 per annum was greater than $70 per annum, the legal rate of interest on $1,000 for one year, of course the contract was held to be usurious.   But the facts of the case under consideration are very different.

What amount is due to the association? is the next question. Constitution, art. VI., sec. 7, after providing, as above quoted, for causing suit to be instituted on the bonds and mortgages, reads: "*   *   and in the event of the sale of the mortgaged premises, they (the directors) shall require payment of debt, interest, and costs from the proceeds of the sale, returning the surplus, if any, to the said stockholders." Undoubtedly the principal debt, $2,100, upon breach of the contract became, and is, due.

What rate of interest is to be charged on it?   As long as Mr. Gillison complied with his contract, and paid his monthly interest, the association had the then right to receive that money, and Mr. Gillison has no right, now that he has broken his contract, to object to the association having applied it to his interest account.

Interest is in the nature of a penalty, in a certain restricted sense, which the law allows one party to recover from another for the use of his money during the time he was unlawfully deprived of its use.   In such cases the law fixes the rate of interest at 7 per cent. per annum.   In the present case, the rate of interest is so merged in the repayment of principal, and so mixed up with speculative profits, as contemplated by the association, that I cannot, and no one else can, prior to the termination of the association's existence, say upon any given day what is the actual rate of interest, upon the breach of the contract.   I hold that the debt bears interest at the rate of seven per cent., and I hold that the contract was broken upon the date when Mr. Gillison became a defaulter.   *   *   *   The interest on $2,100 from July 14, 1886, to date, at the rate of seven per cent. per annum, is the amount of interest now due, to wit, one hundred and thirty-four 75–100 ($134.75) dollars.

Mr. Gillison in his bond agreed that if his bond should be collected by suit, he would pay the additional sum of ten per cent. on the amount due on his bond as counsel fees.    The association has asked that this agreement be enforced.    The learned attorney of Mr. Gillison very ingeniously argued that the association should not, in good conscience, be allowed these fees, inasmuch as the association did not, upon its own motion, institute this suit, as it is a defendant in the action.    The association is a defendant, but upon its own motion it sought affirmative relief against Mr. Gillison, and as to such affirmative relief it is as much an actor as though that relief were sought in a complaint in which the association was the plaintiff.    I therefore hold that Mr. Gillison is due the association, as counsel fees, the sum of two hundred and twenty-three 40–100 dollars, that amount being ten per cent. upon the amount he is due upon his bond as principal and interest.

\*       \*       \*       \*       \*       \*       \*

Wherefore it is ordered, adjudged, and decreed :   1.  That the defendant, D. B. Gillison, is indebted to the Aiken Building & Loan Association on his bond and mortgage in the sum of two thousand four hundred and eighty-one 9–100 dollars, and the further sum, upon arrears and fines due by him as a stockholder in said association, the sum of two hundred and thirty-nine 40–100 dollars, &c., &c.

Judge Hudson heard the case on exceptions to this report, and adopted and confirmed it.    Defendant, Gillison, appealed on the following exceptions :

I. Because the contract on which the bond and mortgage sought to be foreclosed by the Aiken Building & Loan Association were given, is usurious, and therefore null and void, and certainly for the excess beyond the money actually lent.

II. That the constitution and by-laws of the defendant association, under which the loan to the defendant was made, are repugnant to the laws of the land prohibiting usury, and are not authorized by their charter.

III. That the whole scheme of the defendants, the Aiken Building & Loan Association, in forming their association and obtaining a charter of incorporation, was, in effect, to evade the

laws of the State against usury, and to lend their money at exorbitant rates of interest by color of authority under their charter and by-laws, which, without such disguise, would be prohibited by law as glaringly usurious.  But the charter grants no such authority.

IV.  That there was error in allowing counsel fees to the defendants, the Aiken Building & Loan Association, as they were clearly not entitled to such fees.

V.  That the whole decree or finding of the referee affirmed by the judge is founded in error of law and a misapplication of the facts of the case.

*Mr. O. C. Jordan*, for appellant.

*Messrs. Henderson Bros.* and *G. W. Croft*, contra.

April 23, 1888.  The opinion of the court was delivered by

Mr. Justice McIver.  We agree with the Circuit Judge and the special master, Mr. James Aldrich, who, in his able and elaborate report, has shown conclusively that there is no usury in the contract here brought in question.  It would be very difficult to add anything to what is so well said in the report, and we shall not attempt to do so, further than to illustrate his views by two calculations based upon two different views of the case.

It seems that the appellant was not one of the original stockholders in the association, but after it had been in operation for more than a year he became a purchaser of fourteen shares, for which he paid the sum of $308.11, and when the association had but seven years and five months of the nine years for which it was permitted to run by the terms of its charter, the appellant borrowed from the association, or bid off, as it is termed, at a discount of seven hundred dollars, the whole amount which he was permitted to do under the regulations, to wit, the sum of twenty-eight hundred dollars, so that after deducting the discount he received in cash the sum of twenty-one hundred dollars.  Thereupon he executed the bond and mortgage upon which this controversy arises. The bond is in the penal sum of twenty-eight hundred dollars, conditioned for the payment to the said association of "the

monthly sum of twenty-eight dollars (of which the sum of four-
teen dollars per month is for subscription to the said shares, and
the sum of fourteen dollars per month is for interest on the sum
actually paid over to said Daniel B. Gillison); to be paid on or
before the fifth of each and every month until the said associa-
tion shall wind up and determine, and upon such winding up or
determination shall transfer and surrender the said fourteen
shares to the said association in satisfaction of the advantage
aforesaid, and shall stand to and abide by the constitution, rules,
and regulations of said association," &c.

Now, as the association could unquestionably loan to the appel-
lant, or any one else, the amount received by him for the remain-
der of the term for which the association was to run, to wit,
seven years and five months, at ten per cent. interest, we will
first see whether the amount which the appellant would have
actually paid, assuming that he complied with the terms of the
contract at the winding up of the association, would exceed the
amount which he could have been legally required to pay under
an ordinary contract for the borrowing of money with the rate of
interest at ten per cent. per annum:

### 1st Calculation.

| | | |
|---|---:|---:|
| Amount borrowed for 7 years and 5 months at 10 per cent. interest, | | $2,100 00 |
| Interest on same at 10 per cent. per annum, | | 1,557 50 |
| | | |
| Total amount due at maturity, | | $3,657 50 |
| Amount which appellant actually pays under the contract under consideration as follows: | | |
| Amount paid when shares were bought, $ | 308 11 | |
| "   "   per month, $28.00 for 89 months, | 2,492 00 | |
| Amount of discount (so-called) surrendered, | 700 00 | $3,500 11 |
| | | |
| Difference in favor of appellant, | | $157 39 |

If, however, we make a different calculation, based upon the

assumption that each share of the stock will be worth, at the time of the winding up of the association, two hundred dollars, then the result would be, that, *upon such assumption*, the appellant would have to pay more than ten per cent. interest, but for the fact that such result is prevented by the provision in section 5, of art. VI., of the constitution of the association, which is incorporated in, and made a part of, the contract, whereby it is provided that the rate of interest on any advance is not to exceed ten per cent. at the winding up of the association.

### *2nd Calculation.*

| | | |
|---|---:|---:|
| Amount of interest to be paid by appellant according to the contract, $14 per month for 89 months, | $1,246 00 | |
| *Assumed* value of shares to be surrendered, | 2,800 00 | $4,046 00 |
| The sum actually borrowed, | $2,100 00 | |
| Interest on same at 10 per cent. for 89 mos., | 1,557 50 | 3,657 50 |
| Which would make an excess over ten per cent. of | | $388 50 |

But if this assumption should prove to be well founded, and each share at the winding up should be found to be worth two hundred dollars, then, under the terms of the contract, the appellant could not be required to surrender the whole of his shares, but only so much thereof as with the amounts actually paid in cash would be sufficient to repay the sum actually borrowed with interest at the rate of ten per cent. per annum; for that is the necessary effect of the provision of the constitution of the association above referred to, and was, doubtless, inserted for that very purpose.

Of course, when this contract was entered into, it could not possibly be known, with any degree of certainty, whether the shares would be worth at the winding up as much as two hundred dollars each, and if they should not be worth that amount, as seems quite likely from the testimony of the secretary in this case, then it might become necessary for the appellant to surren-

der the whole of his shares in order to refund the amount borrowed, with interest thereon at the rate of ten per cent. per annum, and if so, then, certainly, there would be no usury in the contract. But if, as we have said, such a necessity should not arise by reason of the fact that the shares would prove to be worth two hundred dollars each, then the appellant could not be required, under the contract, to surrender any more of the shares than would be necessary, with the amount of interest previously paid, to repay the sum borrowed, with ten per cent. interest. As the special master has well remarked, this provision for the surrender of the shares may be regarded as in the nature of a mortgage or collateral security, and nothing is more common than for lenders of money to require a deposit of collaterals to an amount exceeding the sum loaned in order to guard against deterioration in values.

This case, it seems to us, differs very materially from the cases cited by the counsel for appellant. In *Bollinger's Case* (12 *Rich. Eq.*, 124), the borrower executed his bond conditioned for the payment of two thousand dollars, with interest thereon at the rate of six per cent. per annum, while the sum actually received by him was only thirteen hundred dollars. This was clearly usurious, for the rate of interest then being limited to seven per cent., the borrower could only have been required, legally, to pay ninety-one dollars per year, whereas his contract required him to pay one hundred and twenty dollars per year. In *Dorsey's Case* (15 *S. C.*, 462), the borrower received one thousand dollars, for which he contracted to pay interest at the rate of six per cent. per annum, and also an additional premium (as it was called) of seven 25–100 dollars per month, amounting to $87 per year, so that the borrower, for the use of $1,000, agreed to pay each year the sum of $60 as interest, plus the sum of $87, as premium (so-called), making in all the sum of $147, which he had to pay each year for the use of $1,000; whereas he could, legally, have only been required to pay $70 per year for the use of that sum of money, as the law then stood. So that, beyond all question, the contract in that case was usurious. In this case, as we have seen, the contract was of a very different character, and under it, in no view of the case, could the appellant be required to pay

more than the rate of interest allowed by law, and hence there was no usury in it.

As to the counsel fees, we see no reason why the appellant should not be required to pay them, as by his contract he expressly agreed to do.

The judgment of this court is, that the judgment of the Circuit Court be affirmed.

MR. JUSTICE McGOWAN concurred.

MR. CHIEF JUSTICE SIMPSON. I concur in the result in this case, upon the ground that section 5, art. 6, of the constitution and by-laws, which forbids the collection of more than ten per cent. upon final settlement, being regarded as a part of the contract when money is borrowed by a stockholder, controls this case, and prevents it from being usurious.